AO 91 (Rev. 11/11)  Criminal Complaint   (modified by USAO for telephone or other reliable electronic means)

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

FILED
RICHARD W. NAGEL
CLERK OF COURT
2/21/24
U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WEST. DIV. DAYTON

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No.  3:24-mj-128 |
| OMAR CABRERA RODRIGUEZ | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  February 20, 2024  in the county of  Montgomery  in the
Southern  District of  Ohio , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) | Possession with Intent to Distribute a Controlled Substance. |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

*Bret Koch*
Complainant's signature

SA Bret Koch, HSI
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
Telephone  *(specify reliable electronic means)*.

Date: February 21, 2024

City and state:  Dayton, Ohio

Caroline H. Gentry
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                  Plaintiff,<br><br>    v.<br><br>OMAR CABRERA RODRIGUEZ,<br><br>                  Defendant. | CASE NO.      3:24-mj-128 |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A CRIMINAL COMPLAINT**

I, Bret N. Koch, Special Agent, being sworn, depose and state the following:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am an "investigative or law enforcement officer" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. I have also been cross designated by the Drug Enforcement Administration ("DEA") and am empowered to investigate and make arrests for offenses under Title 21 of the United States Code. I have been involved with investigations for Title 21 offenses and am familiar with the Interagency Cooperation Agreement between the U.S. Drug Enforcement Administration and the U.S. Immigration and Customs Enforcement ("ICE").

2. I am a Special Agent with the United States Department of Homeland Security ("DHS")/ Homeland Security Investigations ("HSI"), presently assigned to the Office of the Assistant Special Agent in Charge, Cincinnati, Ohio ("HSI Cincinnati"). I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C). I entered on duty in September 2018 as an HSI Special Agent ("SA") assigned to the Office of the Resident Agent in Charge, Alpine, Texas ("HSI Alpine"); with the Office of the Resident Agent

in Charge, Fresno, California ("HSI Fresno") in August 2020; and with HSI Cincinnati in September 2023. As part of my daily duties as an HSI SA, I investigate narcotics offenses in violation of 21 USC § 841(a)(1). I have received training in the area of federal narcotics offenses, and I am a graduate of the Federal Law Enforcement Training Centers' ("FLETC") Criminal Investigator Training Program and the FLETC HSI Special Agent Training Program. In addition to my training at FLETC, I received a Bachelor of Arts degree in Philosophy from Northern Kentucky University and a Master of Arts degree in English from Southern New Hampshire University.

3. I have been the affiant of one prior federal Title III intercept, and I have worked cases in a variety of programmatic areas. While assigned to HSI Alpine, I primarily conducted immigration and smuggling investigations. This experience included investigating federal immigration offenses, human smuggling, narcotics smuggling, and narcotics distribution offenses. In addition, during my time as an HSI SA in both Fresno and Cincinnati, I have also conducted and/or participated in federal investigations involving drug trafficking, firearms offenses, and child exploitation. I have also participated in numerous state-level investigations and operations involving the same.

4. This affidavit is in support of a complaint charging Omar CABRERA Rodriguez with violations of Title 21, United States Code § 841(a)(1), Possession with Intent to Distribute a Controlled Substance. The information set forth in this affidavit is not intended to detail each and every fact and circumstance of the investigation or all the information known to me and other law enforcement investigators. Rather, this affidavit serves only to establish probable cause for the arrest of Omar CABRERA Rodriguez.[1]

## PROBABLE CAUSE

5. Omar CABRERA Rodriguez came to investigators' attention on February 20,

---

[1] I know that "Omar CABRERA Rodriguez" is the correct legal name for this individual; however, based on Spanish language surname customs, I know that this individual should be addressed as "Mr. Cabrera" (his paternal surname) not "Mr. Rodriguez" (his maternal surname). I have capitalized "CABRERA" to indicate this convention.

2024, while members of the Miami Valley Bulk Smuggling Task Force[2] ("MVBSTF") were conducting investigative activities in an area known to law enforcement to frequently involve drug trafficking activity. The following facts were relayed to me through reports and/or discussions with members of the MVBSTF regarding the incident.

6. While conducting investigative activities, MVBSTF agents observed a Chevrolet Tahoe bearing California license plate 9ERK676 parked in a parking lot and registered to a Maria Rodriguez. A search of law enforcement databases revealed that Rodriguez had a history of possession of narcotics for sale and multiple border crossings to and from Mexico.

7. TFO Tim Christian observed the Tahoe (9ERK676) depart and travel eastbound in front of 9285 Main Street, Englewood, Ohio approaching a traffic light. TFO Christian then observed the light turn yellow as the vehicle was approaching and turn red before the vehicle came to the stop bar; however, the vehicle proceeded through the red traffic light and turned left to head northbound on State Route 48. TFO Christian further observed that the vehicle did not use a turn signal while turning at the intersection, and the vehicle then proceeded onto the ramp and entered Interstate 70 eastbound.

8. At approximately 9:30 A.M., at mile marker 34 on Interstate 70 east, Ohio State Highway Patrol ("OSP") Trooper Kyle Pohlabel conducted a traffic stop on the Tahoe (9ERK676) and identified the driver as Omar CABRERA Rodriguez, with California driver's license number D8913872 and a date of birth as August 14, 1991. A check of law enforcement databases revealed that CABRERA had multiple felony drug and weapons charges.

9. During the stop, Trooper Pohlabel observed that CABRERA was nervous and failed to calm down, as evidenced by his hands mildly shaking as he was taking deep breaths. Trooper Pohlabel walked around the vehicle, confirmed that Vehicle Identification Number ("VIN") matched the registration, and asked CABRERA to step out of the vehicle for a

---

[2] The MVBSTF consists of agents/task force officers/law enforcement officers from HSI, Ohio Bureau of Criminal Investigation, Montgomery County Sheriff's Office, Butler Township Police Department, Clark County Sheriff's Office, Vandalia Police Department, and Ohio State Highway Patrol.

consensual pat-down for weapons. Trooper Pohlabel then placed CABRERA in the front seat of Trooper Pohlabel's vehicle.

10. While entering CABRERA's identifying information into Trooper Pohlabel's Mobile Data Terminal, Trooper Pohlabel engaged CABRERA in conversation regarding the nature of CABRERA's trip, and Trooper Pohlabel again observed that CABRERA remained nervous, as evidenced by CABRERA fidgeting in his seat, rubbing his hands together, and breathing heavily from the belly.

11. Based on Trooper Pohlabel's training and experience, Trooper Pohlabel believed that criminal activity was afoot—and thus requested a back-up unit—based on the following. First, CABRERA advised that he had slept in a rest area, became cold, and then left to stay in a hotel; however, there was a hotel 19 miles closer. Second, the Tahoe (9ERK676) was messy, had several back packs and luggage for a limited trip, and had a lived-in look, which is indicative of driving long hours and not wanting to stop. Next, Trooper Pohlabel noted discrepancies in CABRERA's statements: CABRERA advised that he was going to visit his uncle who recently moved to Maryland, but later stated he had visited his uncle six months earlier. In addition, CABRERA was also being deceptive regarding prior possession charges and possession of a firearm. Finally, Trooper Pohlabel observed a ratchet and socket combination set in the driver's door panel, which was consistent with Trooper Pohlabel's training and experience regarding prior investigations of compartments and natural voids within vehicles used to conceal contraband.

12. At approximately 9:47 A.M., OSP Trooper Nick Nolte and "Red," his K9[3], arrived at the scene and performed a free air sniff of the Tahoe (9ERK676). At the completion of the sniff, Trooper Nolte indicated to Trooper Pohlabel that "Red" indicated a positive alert to the presence of narcotic odor. Trooper Pohlabel then asked CABRERA whether CABRERA had

---

[3] Trooper Nolte and "Red" are certified by the State of Ohio in the detection of narcotics odor. Multiple agents notified me that "Red" is *not* certified in the detection of marijuana odor, but only other narcotic odors.

been in possession of the vehicle during the trip and if the contents of the vehicle were his. CABRERA responded in the affirmative.

13. Following the free air sniff and "Red's" alert to the presence of narcotic odor, a probable cause search of the vehicle was conducted, and Trooper Pohlabel located a cardboard box with fourteen vacuum-sealed packages of suspected narcotics. Trooper Pohlabel then advised CABRERA that he was under arrest, read CABRERA his Miranda advisements, and ensured that CABRERA understood them.

14. The Tahoe (9ERK676), along with CABRERA, were transported to the OSP post at 400 Smith Drive, Clayton, Ohio 45315.[4] While there, agents conducted an extensive search of the vehicle. Of the fourteen vacuum-sealed packages, five appeared to contain a pressed, white powder, and nine appeared to contain a white, crystal-like substance. TFO Christian tested one package containing white powder with the MX-908 portable mass spectrometer, which yielded an alert for cocaine. TFO Christian attempted to then test one package of the crystal-like substance but was unable to complete the test due to an issue with the testing equipment. It may be noted that HSI SAs took preliminary weights of the vacuum-sealed packages and determined that, cumulatively, there were 8.6 kilograms (approximate gross weight) of the crystal-like substance and 5 kilograms (approximate gross weight) of the white, powdery substance. The suspected narcotics were booked into the Montgomery County Sheriff's Office Property Room and transferred to the Miami Valley Crime Lab for laboratory analysis and official weights.

15. Although the results from the Miami Valley Crime Lab are pending receipt, I have seen such substances in numerous narcotics investigations that I have personally worked. Based on my training, experience, and conversations with other experienced narcotics investigators, I believe that the white, powdery substance is cocaine, and that the crystal-like substance is methamphetamine. Each of these substances appeared consistent with cocaine and methamphetamine that I have seized at various points in my career. Furthermore, I know that K-

---

[4] Trooper Pohlabel maintained constant observation of the Tahoe (9ERK676) while it was being towed to OSP.

9 Officer "Red" is trained only to alert to the presence of narcotics.

16. This quantity of cocaine—5,000 grams—is a trafficking quantity inconsistent with personal use. As such, I submit that probable cause exists to believe that Omar CABRERA Rodriguez has violated Title 21, United States Code §§ 841(a)(1) and 841(b)(1)(C), Possession with Intent to Distribute a Controlled Substance, to wit: cocaine, a Schedule II controlled substance.[5]

## CONCLUSION

17. The above facts set forth probable cause to believe that Omar CABRERA Rodriguez is in violation of Title 21, United States Code §§ 841(a)(1) and 841(b)(1)(C). I request that an arrest warrant be issued for Omar CABRERA Rodriguez for this violation.

*Bret Koch*

Bret Koch
Special Agent, Homeland Security Investigations

Affidavit submitted to me by reliable electronic means and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1, 4(d), and 41(d)(3) this __21st__ day of February, 2024.

Caroline H. Gentry
United States Magistrate Judge

---

[5] The evidence suggests that the 8,600 grams of crystal-like substance is a trafficking quantity of methamphetamine, a Schedule II controlled substance. Because this affidavit is being submitted for the limited purpose of establishing probable cause for Omar CABRERA Rodriguez's arrest, and because at this time we only have field test results for cocaine, I am using his possession of cocaine as the basis for this criminal complaint.